Marilyn **BRYANT,** individually and on behalf of Vincent Jay Bryant; Tom Bryant; Joshua Homer Bryant; Sonny Bryant; and Teancum Bryant, Plaintiffs,

v.

**THE UNITED STATES of America; Barbara Franc, Defendants.**

**No. CIV 98–1495 PCT RCB.**

United States District Court, D. Arizona.

Jan. 11, 2000.

---

John D. Everroad, Kim Seibert Alvarado, Fennemore Craig, PC, Phoenix, AZ, for Plaintiff.

John Robert Mayfield, U.S. Atty's Office, Phoenix, AZ, Madeline Henley, U.S. Dept. of Justice, Washington, DC, Vincent John Montell, Teilborg, Sanders & Parks, PC, Phoenix, AZ, for Defendant.

## ORDER

BROOMFIELD, District Judge.

Plaintiffs have brought this action against the United States pursuant to the Federal Tort Claims Act ("FTCA") based on injuries sustained by Vincent Bryant during a dental procedure performed at a federal hospital in Window Rock, New Mexico. Plaintiffs have filed a motion requesting certification of several questions of law to the Navajo Supreme Court or, alternatively, a single question of law to the New Mexico Supreme Court. The government has filed a memorandum in opposition to this request and also a motion to dismiss the Plaintiffs' loss of consortium claims. Having carefully considered the arguments raised, the court will now rule on these matters.

## I. BACKGROUND

On October 9, 1997, Vincent Bryant entered the Northern Navajo Medical Center ("Medical Center"), located in Shiprock, New Mexico, to have his wisdom teeth extracted. The Medical Center is a federal hospital operated by Indian Health Services ("IHS") and is located on the Navajo reservation. During the dental procedure, Vincent suffered irreversible brain damage, allegedly due to the negligence of the

1. Tom Bryant is Vincent's adoptive father.

oral surgeon and the nurse anesthetist. He remains in a persistent vegetative state and currently resides in a long-term rehabilitation facility in St. George, Utah.

At the time of his injury, Vincent was nineteen-years, two-months old and lived with his parents and three brothers. Vincent's brothers were the following ages at the time of his injury: Sonny Bryant was fifteen-years, ten-months old; Teancum Bryant was thirteen-years, eight-months old; and Joshua Homer Bryant was eleven-years, ten-months old.

In their Complaint, Plaintiffs seek loss of consortium damages against the United States under their FTCA claim. Both Vincent's parents, Marilyn and Tom Bryant,[1] and his siblings seek such damages.

## II. DISCUSSION

In their motion seeking certification of certain questions of law, Plaintiffs assert that this court must apply Navajo law in determining the United States' liability under the FTCA. Based on this assertion, they move the court to certify the following three questions of law to the Navajo Nation Supreme Court:

1. Under Navajo law, does the New Mexico Medical Malpractice Act, N.M. Stat. Ann. § 41–5–1 to 41–5–29, apply to a medical malpractice cause of action that occurred within the jurisdiction of the Navajo Nation?

2. Under Navajo law, may parents recover damages for loss of consortium resulting from catastrophic injuries to a nineteen-year-old child who lived with his parents since minority?

3. Under Navajo law, may minor siblings recover damages for loss of consortium resulting from catastrophic injuries to another sibling?

Alternatively, if this court determines that New Mexico state law and not Navajo law applies in this FTCA action, Plaintiffs ask the court to certify the following question to the New Mexico Supreme Court:

> 1. Under New Mexico law, may minor siblings recover damages for loss of consortium resulting from catastrophic injuries to another sibling?

In response, the government maintains that New Mexico state law, not Navajo law, governs its liability under the FTCA in this case. It further argues that certification to the New Mexico Supreme Court of the proposed question of law is improper because this court lacks jurisdiction over the siblings' loss of consortium claims due to their failure to exhaust administrative remedies and because New Mexico law gives ample indication regarding the propriety of loss of consortium claims brought by siblings of an adult. The government also moves to dismiss the siblings' loss of consortium claims due to their failure to exhaust administrative remedies and to dismiss all of the Plaintiffs' loss of consortium claims for failure to state a claim upon which relief can be granted.

The first issue the court must resolve is the identity of the law governing the United States' liability in this action. Only after this question is resolved can the court properly address issues relating, first, to the propriety of certifying questions of law and, second, to the United States' motion to dismiss.

### A. Law Governing Liability of United States under FTCA in this Action

■ Under the FTCA, the United States has waived its sovereign immunity to the following extent:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Since the enactment of this provision in 1948, courts have operated under the rule that the phrase the "law of the place" refers to the law of the state where the negligent act or omission occurred. *See, e.g., F.D.I.C. v. Meyer,* 510 U.S. 471, 478, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State— the source of substantive liability under the FTCA."); *Miree v. DeKalb County,* 433 U.S. 25, 29 n. 4, 97 S.Ct. 2490, 2494 n. 4, 53 L.Ed.2d 557 (1977); *Rayonier Inc. v. United States,* 352 U.S. 315, 318–19, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957); *Kruchten v. United States,* 914 F.2d 1106, 1107 (8th Cir.1990); *Brown v. United States,* 653 F.2d 196, 201 (5th Cir.1981); *United States v. English,* 521 F.2d 63, 65 (9th Cir.1975). Courts have consistently reached this same conclusion even when the negligent act or omission occurred on Indian land located within a state. *See Red Lake Band of Chippewa Indians v. United States,* 936 F.2d 1320 (D.C.Cir. 1991); *Seyler v. United States,* 832 F.2d 120 (9th Cir.1987); *Bryant v. United States,* 565 F.2d 650 (10th Cir.1977). Consistent with this traditional rule regarding the meaning of the "law of the place," the parties agreed in the joint case management plan filed with the court that New Mexico substantive law applies in determining the United States' liability in this case. In their motion requesting certification of questions of law to the Navajo Supreme Court, however, Plaintiffs now assert that Navajo law applies because the alleged negligent acts or omissions occurred in a hospital located on Navajo tribal land. They base this new assertion on a recent case decided by the U.S. Dis-

trict Court for the District of New Mexico. *Cheromiah v. United States,* 55 F.Supp.2d 1295 (D.N.M.1999).

In *Cheromiah,* the plaintiffs' son died due to complications arising from a bacterial infection. The plaintiffs brought an FTCA claim against the United States based on the alleged negligence of doctors at an IHS hospital in failing to diagnose and treat the infection. The hospital was located on Acoma tribal land within the State of New Mexico and was operated by IHS pursuant to a lease agreement with the Acoma Tribe. *See id.* at 1297.

The plaintiffs in *Cheromiah* sought a ruling from the district court that the New Mexico Medical Malpractice Cap ("NMMMC") did not protect the government because the law of the Acoma Tribe and not New Mexico law governed the liability of the United States under the FTCA. The plaintiffs argued that because the alleged negligence occurred within the boundaries of the Acoma Tribe, its law was the "law of the place" where the negligent acts or omissions occurred. *See id.* at 1301. Finding the logic of the plaintiffs' argument "compelling," the district court ruled that the law of the Acoma Tribe was the applicable law under 28 U.S.C. § 1346(b) and that, therefore, the NMMMC did not apply. *See id.* at 1302, 1309.

In reaching its decision, the district court in *Cheromiah* first determined that courts had never held that the "law of the place" simply and always means the "law of the state." In support of this conclusion, the district court cited decisions holding that in the District of Columbia, the law of the District applies, and that in U.S. territories, such as Puerto Rico and Guam, the law of the territory applies. *See id.* at 1302. The primary support offered by the district court for its conclusion, though, was an analysis demonstrating that a private person in like circumstances to the

United States would be subject to the jurisdiction of the Acoma Tribal Court. The court found that based on Supreme Court precedent a private individual would be subject to such jurisdiction because the United States had entered into a consensual relationship with the Acoma Tribe through the lease agreement and because the United States' conduct had a significant impact on the health and welfare of the tribe. *See id.* at 1303–05. From this conclusion, the court found that the Acoma Tribe was the relevant political entity that controlled the jurisdiction in which the alleged tort occurred. *See id.* at 1305 (citing *Hess v. United States,* 361 U.S. 314, 319, 80 S.Ct. 341, 345, 4 L.Ed.2d 305 (1960) ("[T]he term 'place' in the [FTCA] means the political entity ... whose laws shall govern the action against the United States 'in the same manner and to the same extent as a private individual under like circumstances.' ")). The court determined that it was "therefore compelled to conclude that the law of the Acoma Tribe is the 'law of the place' within the meaning of the FTCA." *Id.* After reaching this conclusion, the *Cheromiah* court noted that in none of the prior cases in which state law was applied for claims arising from conduct on Indian land was the potential application of tribal law as the "law of the place" raised as an issue. The court thus concluded that these cases only demonstrated that tribal law had never before been applied to an FTCA claim, not that such application was improper. *See id.* at 1306.

Plaintiffs rely solely on *Cheromiah* in arguing that Navajo law applies in this case. This court, however, does not find the reasoning of *Cheromiah* persuasive. To the extent the district court in *Cheromiah* relied on rulings in other cases that the "law of the place" includes the law of the District of Columbia and U.S. territories, this court does not find such cases supportive of a ruling that tribal law can

constitute the "law of the place." The court finds these cases distinguishable because they deal with situations in which the situs of the negligent act or omission was not located within the boundaries of any state. In contrast, the Navajo Nation and the Medical Center are located within the State of New Mexico. The court finds another line of cases more directly on point with the circumstances presented here. Specifically, several courts have held that when the negligent act or omission occurred on a federal enclave within a state, that state's law and not federal law applies. *See, e.g., Shankle v. United States,* 796 F.2d 742 (5th Cir.1986) (acts occurred on federal military reservation); *Lutz v. United States,* 685 F.2d 1178, 1184 (9th Cir.1982) (acts occurred on air force base); *see also Brock v. United States,* 601 F.2d 976 (9th Cir.1979) (recognizing and relying on this line of cases). Similarly, because the acts here occurred on tribal land located within the State of New Mexico, the substantive law of New Mexico should apply.

The principal reason offered by the district court in *Cheromiah* in support of its conclusion regarding the "law of the place" was that a private person in like circumstances to the United States would have been subject to the jurisdiction of the Acoma Tribal Court. Based on this finding, the court determined that the Acoma Tribe was the political entity whose laws controlled the place where the alleged negligence occurred. *See Cheromiah,* 55 F.Supp.2d at 1308. The Ninth Circuit, however, has rejected the application of such reasoning regarding "the law of the place," albeit in a slightly different context. *See Brock,* 601 F.2d at 980.

The plaintiffs in *Brock* sued the United States under the FTCA based on an acci-

dent that occurred during work on a dam in the Columbia River. *See id.* at 977. The issue before the Ninth Circuit was whether Oregon or Washington law applied as the "law of the place" under the FTCA. The United States' alleged negligence occurred in the State of Washington, but the plaintiffs asserted that Oregon had jurisdiction of that geographic area pursuant to the Oregon Admission Act, which gave Oregon and Washington concurrent jurisdiction over the Columbia River. *See id.* The plaintiffs argued that "law of the place" should be interpreted to mean the law of the state that has jurisdiction over the place where the negligent act or omission occurred. The government, on the other hand, argued that the phrase means the law of the state in which the negligence occurred. The Ninth Circuit adopted the government's interpretation. *See id.* at 978.

Reviewing the legislative history of the FTCA, the court in *Brock* found that Congress intended "the law of the place" to mean the law of the state where the negligence occurred. *Id.* at 978. The court further determined that Supreme Court precedent supported a territorial, as opposed to a jurisdictional, interpretation of "law of the place." It cited *Hess v. United States,* 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960), and noted that in that case the Supreme Court concluded that when the wrongful act or omission occurred within "the territorial limits of the State of Oregon," "liability must ... be determined in accordance with the law of that place." *Hess,* 361 U.S. at 315, 318, 80 S.Ct. at 345. The Ninth Circuit found that *Hess* stood for the proposition that "place" is equated "with the state as defined by its political or territorial boundaries." *Brock,* 601 F.2d at 979.[2] In support of its conclu-

---

**2.** In contrast, the district court in *Cheromiah* found that *Hess* stood for the rule that "place" is equated to the political entity with-

in whose jurisdiction the negligent act or

sion that Washington law applied, the Ninth Circuit next noted a line of cases relating to federal enclaves located within states. In these cited cases, while the negligent acts had occurred in areas subject to federal jurisdiction, such as military installations, the courts determined that "place" could not in such circumstances mean the law of the entity that had jurisdiction over the situs of the negligent act. The courts rather determined that because the negligent acts had occurred within the territorial boundaries of a state, that state's law was the "law of the place." *See Brock*, 601 F.2d at 979. Finally, the Ninth Circuit rejected the specific reasoning relied upon by the district court in *Cheromiah*:

> The plaintiffs also contend that since a private person could be sued in Oregon court for negligence occurring within Washington's territorial limits, under § 1346(b) the United States should be treated likewise. This argument misconstrues the provision. The statute provides that "[t]he government shall be liable ... if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." It is only after "the place" has been determined that the government shall become liable as a private claimant would become liable under that state's law.

*Id.* at 980.

In addition to the fact that the reasoning employed by the district court in *Cheromiah* is unpersuasive in light of Ninth Circuit precedent, the court finds compelling reasons for adhering to the traditional rule that when negligent acts or omissions occur within the boundaries of a state, the law of that state constitutes the "law of the place." These reasons were noted in another case emanating from the United States District Court for the District of New Mexico. *Louis v. United States*, 54 F.Supp.2d 1207 (D.N.M.1999). In *Louis*, the district court was presented with the same question as in *Cheromiah*, namely whether state or tribal law was the "law of the place" when the negligent acts occurred on tribal land located within the state. The district court in *Louis* reached the opposite conclusion as that reached by the court in *Cheromiah*, i.e., that state and not tribal law constitutes the "law of the place." In support of this conclusion, the *Louis* court first noted that in several decisions over the years other courts had assumed without discussion that in cases arising on Indian land within a state, the substantive law of the state is controlling in an FTCA action. *See Louis*, 54 F.Supp.2d at 1209. The court then recognized problems that would arise if "law of the place" was interpreted to mean tribal law in such circumstances:

> [I]t would subject the United States to varying and often unpredictable degrees of liability, depending on the reservation that was the site of the occurrence. In the District of New Mexico alone, for example, there are great differences between the many tribes and their approaches to legal issues. In some instances, the difficulty in proving the existence and substance of any tribal law on the subject of the tort would be considerable. The court does not believe Congress intended such a result when adopting the FTCA ....

*Id.* at 1210 n. 5.

This court agrees with the *Louis* court that an abrupt judicial departure from the traditional rule of applying state law in FTCA cases is unwise in light of the potential difficulties application of tribal law would create. The court further finds that the Ninth Circuit's reasoning in *Brock* weighs against use of Navajo law in this

omission occurred. *See Cheromiah*, 55 F.Supp.2d at 1302.

case. Accordingly, the court concludes that New Mexico and not Navajo law is the "law of the place" in this case and governs the United States' liability under the FTCA.

### B. Certification of Question of Law to the New Mexico Supreme Court

Because the court has determined that New Mexico and not Navajo law applies in this case, it will consider only Plaintiffs' alternative request for certification of a single question of law to the New Mexico Supreme Court—specifically, whether minor siblings can recover damages for loss of consortium resulting from catastrophic injuries to another sibling. According to New Mexico law, its supreme court "may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of [New Mexico]." N.M. Stat. Ann. § 39–7–4. The New Mexico Supreme Court has held that it "will only accept certified questions when [its] answer is determinative and 'either disposes of the entire case or controversy, or disposes of a pivotal issue that defines the future course of the case.' " *City of Las Cruces v. El Paso Elec. Co.*, 124 N.M. 640, 954 P.2d 72, 77 (1998) (quoting *Schlieter v. Carlos*, 108 N.M. 507, 775 P.2d 709, 710–11 (1989)).

According to Plaintiffs, New Mexico law regarding loss of consortium claims has drastically evolved since 1994 and no published decision has been issued by a New Mexico court since that time regarding the ability of siblings to bring such claims. The government, on the other hand, argues that certification of this question is improper for two reasons: (1) the court lacks subject matter jurisdiction over the loss of consortium claims brought by Vincent's siblings because they failed to ex-

haust their administrative remedies; and (2) controlling New Mexico precedent exists answering the question sought to be certified. The government also moves to dismiss the Plaintiffs' claims for loss of consortium based on these same two grounds.

#### 1. *Exhaustion of Administrative Remedies*

■ The government initially argues that certification to the New Mexico Supreme Court of the legal question regarding loss of consortium claims by siblings would be improper because this court lacks jurisdiction over and cannot even consider these claims. Specifically, the government argues that Vincent Bryant's siblings did not comply with the jurisdictional prerequisite to filing an FTCA action of submitting an adequate administrative claim to the appropriate agency.

■ The FTCA sets forth the administrative procedure that a claimant must follow prior to filing suit against the United States:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim with six months after it is first filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). The requirement of submitting an administrative claim is jurisdictional in nature.[3] *Cadwalder v. United*

---

**3.** Plaintiffs argue that the United States did

not raise in either its Answer or in the case

*States,* 45 F.3d 297, 300 (9th Cir.1995). The Ninth Circuit has held that "section 2675(a) requires the claimant or his legal representative to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Warren v. United States Dep't of Interior Bureau of Land Management,* 724 F.2d 776, 780 (9th Cir.1984).

The government argues that the administrative claim form and related documentation submitted by the Bryants and their attorney to the federal government did not list loss of consortium as a claim or identify any of Vincent's siblings as claimants. It contends that to be entitled to sue in federal court, each and every claimant must exhaust his or her administrative remedies by presenting a claim describing his or her injury and stating a sum certain for his or her damages.

Plaintiffs argue that the administrative claim form and related documentation submitted to the federal government sufficiently identified the loss of consortium claim and identified Vincent's siblings as claimants. They argue that while the administrative claim form was signed only by Marilyn Bryant and the letter submitted by their attorney only listed Marilyn and Tom Bryant as clients, Marilyn Bryant was the proper party to raise the minor siblings' legal claims, as she is their mother.

The court finds that the documentation submitted by the Bryants to the federal government does identify loss of consortium as a claim. The letter submitted by the Bryants' attorney specifically states,

"In addition to the extensive medical expenses and lost wages, the damages include claims by the Bryant family for loss of consortium." (Def.'s Ex. A, at 6.) Furthermore, the court finds that the letter identifies Sonny Bryant, Teancum Bryant, and Joshua Homer Bryant as claimants. In the paragraph describing the loss of consortium claim, the letter specifically refers to "Vincent's three brothers," and describes the effect Vincent's injury had on them. The court further finds irrelevant the fact that the claim form and documentation was submitted by Marilyn and Tom Bryant and their attorney. As the mother of these minor siblings, Marilyn Bryant had the legal authority to submit the administrative claim on their behalf. *See Avila v. INS,* 731 F.2d 616 (9th Cir.1984) (holding that father's signature on claim brought on behalf of adult incompetent son was sufficient to fulfill the administrative claim prerequisite).

In conclusion, the court finds that the documentation submitted by Plaintiffs sufficiently described the injuries and identified the claimants so as to enable the federal agency to begin its own investigation and also contained a sum certain damages claim of $20 million. Accordingly, the court will not dismiss for lack of jurisdiction the loss of consortium claims brought by Vincent Bryant's siblings.

2. *New Mexico Law on Loss of Consortium Claims*

Prior to 1994, the courts of New Mexico did not recognize a common law claim for loss of consortium. *See Solon v. WEK Drilling Co.,* 113 N.M. 566, 829 P.2d 645,

---

management plan the siblings' alleged failure to exhaust their administrative remedies. Plaintiffs further point out that the deadline for dispositive motions was October 29, 1999, and the United States' motion to dismiss was filed November 18, 1999. However, because the issue regarding exhaustion of administrative remedies relates to this court's subject matter jurisdiction, the United States is permitted to raise it any time. *See* Fed.R.Civ.P. 12(h)(3); *Rath Packing Co. v. Becker,* 530 F.2d 1295, 1303 (9th Cir.1975), *aff'd,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

650 (1992). In *Solon,* the New Mexico Supreme Court noted it had not recognized "spousal, filial, parental, or other" loss of consortium claims. *Id.* In that case, the court said it was not inclined to reexamine the case law in New Mexico disallowing recovery for loss of consortium because the plaintiffs in that case were not foreseeable victims of the defendants' negligence. *See id.* The plaintiffs were the parents of the twenty-five year old victim of the negligence. The court held that it was not foreseeable that the victim would still be residing with his parents nor that there would be a close and loving relationship with them. *See id.* Accordingly, the court held that the parents could not recover for lost consortium because the defendant had owed them no duty of care.

In 1994, New Mexico law regarding loss of consortium changed with the New Mexico Supreme Court's decision in *Romero v. Byers,* 117 N.M. 422, 872 P.2d 840 (1994). In that case, the supreme court did what it was unwilling to do in *Solon*—reexamine the case law in New Mexico regarding loss of consortium claims. The court overruled prior case law and held that spouses can bring common law claims for loss of consortium. *See id.* at 845. The court reached this conclusion because the justifications relied upon in the past for denying spousal consortium claims no longer existed. *See id.* at 843–44. The court found that though New Mexico tort law may not have been well enough developed in the past, as it stood in 1994 it provided a sufficient basis for incorporating the claim of negligently caused loss of spousal consortium. *See id.* at 843. The court found that the issue under New Mexico tort law, as recognized in *Solon,* is whether the negligent actor owed a duty to the spouse who suffers the loss of consortium. *See id.* at 843–44. Upon its recognition of spousal claims for loss of consortium, the court also permitted a claim by a minor child for loss of a negligently killed parent's guid-

ance and counseling, an action rooted in loss of consortium. *See id.* at 846.

Plaintiffs argue that *Romero* opened the door to loss of consortium claims and that no New Mexico court since that time has addressed the issue of a minor sibling's right to recover damages for loss of another sibling's consortium. Both parties, however, cite a subsequent New Mexico Supreme Court case that provides considerable guidance regarding lost consortium claims. *See Fernandez v. Walgreen Hastings Co.,* 126 N.M. 263, 968 P.2d 774 (1998).

In *Fernandez,* the plaintiff brought a claim for loss of consortium based on the defendant's alleged negligence in causing the death of the plaintiff's twenty-two-month-old granddaughter. *Id.* at 776. The plaintiff asserted that she was entitled to such damages because she was her granddaughter's "guardian, caretaker, and provider of parental affection." *Id.* The trial court dismissed the consortium claim on summary judgment on the grounds that New Mexico had not recognized loss of consortium outside the spousal relationship, but the New Mexico Supreme Court reversed this decision on appeal and held that the plaintiff should be given the opportunity to prove that she uniquely suffered a loss of her grandchild's consortium. *Id.* at 782, 784.

In reaching its decision, the New Mexico Supreme Court stated that the plaintiff's "consortium injury arises from her unique relationship with the victim (and not her family title)." *Id.* at 782. Plaintiffs emphasize this language in their briefings to the court and argue that it opens the door for loss of consortium claims regardless of the plaintiff's family title. In the *Fernandez* decision, however, the New Mexico Supreme Court provided further guidance regarding the propriety of lost consortium

claims brought by those other than a spouse:

> In our state, it is not uncommon for several generations of a family to live in the same home, as in this case. We hold that such foreseeability can exist where: (1) the victim was a minor; (2) the plaintiff was a familial care-taker, such as a parent or grandparent, who lived with and cared for the child for a significant period of time prior to the injury or death; (3) the child was seriously physically injured or killed; and (4) the plaintiff suffered emotional injury as a result of the loss of the child's companionship, society, comfort, aid, and protection.

*Id.* at 784.

■■ The government argues and the court agrees that the holding in *Fernandez* provides controlling precedent answering the question sought to be certified by the Plaintiffs. Specifically, the New Mexico Supreme Court held that claims for loss of consortium are permissible when the victim was a minor and the plaintiff was a familial caretaker who lived with and cared for the victim. In this case, the younger siblings' loss of consortium claims fail on both accounts. Vincent Bryant was not a minor at the time of his injury and his younger siblings do not assert that they were his caretaker. In fact, despite Plaintiffs' arguments that a New Mexico court would clearly allow Vincent's parents to recover consortium damages, *Fernandez* forecloses such claims by Marilyn and Tom Bryant because Vincent was not a minor at the time of his injury.

■ In addition to the holding reached by the supreme court in *Fernandez*, the holding in *Solon* also remains good law in New Mexico. The supreme court in *Romero* did not question the holding of *Solon* that loss of consortium is not available to the parents of a twenty-five-year-old victim because they are not foreseeable victims of the alleged negligence and thus the defendant does not owe them a duty of care. Indeed, the court in *Romero* and *Fernandez* approved the use of such foreseeability and duty analysis in relation to loss of consortium claims. *See Romero,* 872 P.2d at 843–44; *Fernandez,* 968 P.2d at 783. As the U.S. District Court for the District of New Mexico noted, "although New Mexico recognizes loss of consortium claims for the death of a minor child, [it] does not permit such claims for the parents of an adult child." *Cheromiah,* 55 F.Supp.2d at 1309 (citing both *Solon* and *Fernandez* ).

In conclusion, because controlling New Mexico Supreme Court decisions exist, namely *Fernandez* and *Solon,*[4] the court will deny Plaintiffs' motion to certify its proposed question of law to the New Mexico Supreme Court.

### C. Government's Motion to Dismiss Loss of Consortium Claims

■ Still pending before the court is the United States' motion to dismiss all of the Plaintiffs' loss of consortium claims based on the controlling New Mexico Supreme Court decisions in *Solon* and *Fernandez.* Aside from disputing the merits of this motion, which the court discussed in relation to Plaintiffs' motion to certify, Plaintiffs argue that the court should deny the motion as untimely and permit them to produce evidence at trial in support of their lost consortium claims. They contend that the motion to dismiss was not filed until November 18, 1999, while the deadline established by this court for filing dispositive motions was October 29, 1999.

---

4. The government also relies on *Chavez v. Sundt Corp.,* 122 N.M. 78, 920 P.2d 1032 (1996), but the court does not find that case instructive, as the New Mexico Supreme Court provided no discussion regarding loss of consortium.

In reply, the United States does not dispute that it missed the court-imposed deadline, but instead argues that it can still raise the issue because it relates to this court's jurisdiction.

In its reply brief, the government argues that it is well settled that challenges to a federal court's subject matter jurisdiction may be raised at any time and that sovereign immunity is a question of subject matter jurisdiction. The government further asserts that it has waived its sovereign immunity under the FTCA only under specific and limited conditions, i.e., only in such "circumstances where [it], if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The government argues that federal courts lack jurisdiction to entertain claims against it under the FTCA for which a private defendant in like circumstances could not be held liable. *See Midwest Knitting Mills, Inc. v. United States,* 950 F.2d 1295, 1296 (7th Cir.1991) ("Because the FTCA incorporates the substantive law of the state where the tortious act or omission occurred, a plaintiff must state a claim under the substantive law in the state where the act or omission occurred. Therefore, if there is no cause of action under state law, the district court is without jurisdiction."); *Dorking Genetics v. United States,* 76 F.3d 1261, 1266 (2d Cir. 1996) ("[A] claim which fails to state all six elements of § 1346(b) or which is otherwise excepted from § 1346(b), *see* 28 U.S.C. § 2680, must be dismissed for lack of subject matter jurisdiction."). Accordingly, the government maintains that this court lacks jurisdiction to consider Plaintiffs' lost consortium claims because a private defendant in like circumstances could not be liable for such claims under New Mexico law.

Though recognizing the logic behind the government's argument, the court is not prepared in this case to hold that in an FTCA action the United States is free to raise at any time issues relating to its liability under the governing law because these issues relate to its sovereign immunity and therefore to the court's subject matter jurisdiction. Under such logic, the United States could file dispositive motions going to the merits of a plaintiff's FTCA claim at any time, regardless of deadlines established by the court for filing such motions.[5] The court need not determine the merits of this argument, however, because Ninth Circuit case law exists permitting district courts upon their own motion to dismiss complaints for failure to state a claim where the plaintiff could not possibly win relief. *See Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 637–38 (9th Cir. 1988); *Omar v. Sea–Land Serv., Inc.,* 813 F.2d 986, 991 (9th Cir.1987); *Wong v. Bell,* 642 F.2d 359, 361 (9th Cir.1981). Plaintiffs had notice that this court was considering dismissal of their loss of consortium claims, and they had an opportunity to present arguments to the court regarding the propriety of such dismissal in light of New Mexico law. Plaintiffs, in fact, were the ones who initially raised issues relating to their loss of consortium claims when they filed their motion requesting certification.

In ruling on the Plaintiffs' motion for certification, the court determined that New Mexico case law fails to recognize a claim for lost consortium by siblings or

---

**5.** In relation to this problem, the court notes that the United States originally moved to dismiss the lost consortium claims for failure to state a claim. Under the government's logic, any motion to dismiss for failure to state a claim in an FTCA action could be characterized as a motion to dismiss for lack of subject matter jurisdiction and be brought by the United States at any time.

parents of a victim who was not a minor at the time he suffered the relevant injuries. *See Fernandez,* 968 P.2d at 784; *Solon,* 829 P.2d at 650. Accordingly, Plaintiffs cannot possibly win relief on their claims for lost consortium, and the court will dismiss these claims.

IT IS ORDERED denying Plaintiffs' Motion for Certification of Question of Law to Navajo Supreme Court or, Alternatively, New Mexico Supreme Court, filed October 29, 1999 (doc. 116).

IT IS FURTHER ORDERED grant Defendant's Motion to Dismiss Plaintiffs' Loss of Consortium Claims, filed November 18, 1999 (doc. 124). Plaintiffs Marilyn Bryant's, Tom Bryant's, Joshua Homer Bryant's, Sonny Bryant's, and Teancum Bryant's loss of consortium claims are dismissed.