1999-NMCA-133

991 P.2d 1

Cynthia **CHAVEZ**, Plaintiff–Appellant,

v.

Isabel **TORRES**, Individually, Defendant–Appellee.

No. 19,818.

Court of Appeals of New Mexico.

Aug. 16, 1999.

Dennis W. Montoya, Albuquerque, for Appellant.

Gregory L. Biehler, Phyllis H. Bowman, Beall & Biehler, P.A., Albuquerque, for Appellee.

## OPINION

BOSSON, Judge.

{1} This case involves a homeowner's duty to control foreseeable criminal activity by a third party on her land that causes personal injury to a visitor of that third party. We examine that duty as it is alleged to arise under the common-law doctrine of negligent entrustment and as it occurs under the Restatement (Second) of Torts § 318 (1965). We hold that negligent entrustment does not apply as a matter of law. We assume that the duty of care described in Section 318 of the Restatement applies in New Mexico, but we conclude the injured visitor did not set forth sufficient factual allegations to create a genuine issue of material fact for trial. Thus, we affirm the district court's entry of summary judgment for the homeowner.

## BACKGROUND

{2} Michael Anderson is Isabel Torres' adult son. Anderson previously lived with Torres and had his own key to her house. During that time, Torres noticed that her son

had an alcohol problem, and there were several incidents of damage to property as a result of Anderson's intemperate and violent behavior. During one such incident, Torres called the police because her son was damaging property in her home.

{3}  Cynthia Chavez was Anderson's girlfriend. Anderson and Chavez lived together at Torres' house for a period of four to five months. A couple of months into the relationship, Chavez also realized Anderson had a drinking problem. Chavez and Torres even convinced Anderson to seek help for his drinking problem. After a while, Anderson and Chavez moved out of the Torres house and into Chavez's residence together, but Anderson kept the key to his mother's house.

{4}  On May 14, 1996, Anderson and Chavez were visiting a friend, and Anderson began drinking. When he became angry with Chavez and pushed her, she told Anderson to take her to her mother's house and leave her there. Instead, Chavez drove Anderson to Torres' house because Anderson said he had to retrieve something at the house, and then he said he would take Chavez to her mother's house.

{5}  The two arrived at Torres' house at approximately noon. Torres was not at home. Anderson told Chavez to get out of the vehicle or he would kill her. He then proceeded to grab Chavez's arm and take her forcibly into the house. While holding her hostage for a period of four to five hours, Anderson repeatedly assaulted Chavez in the Torres house.

{6}  During this period of time while she was at work, Torres twice spoke with Anderson and Chavez over the telephone. The first conversation was uneventful. During the second conversation, Chavez claims she tried to alert Torres to what Anderson was doing to her, that she needed help, and that she was afraid. When Chavez had the chance, she told Torres that Anderson had a gun. She asked Torres not to hang up but to remain on the line. Torres replied that she did not want any trouble at her house, that she had to get back to her work, and then she hung up. Although Torres indicated that she would be coming home soon, she did not do so. Torres did call a family member to go

by the house; however, the family member did not actually visit the house, but only called and was told by someone at the house that everything was all right. After Torres' second conversation with Chavez, Anderson continued his assaults for another hour and a half until he passed out from intoxication, and Chavez was finally able to escape.

{7}  Chavez sued Anderson and Torres for the assaults she suffered at the Torres home. Among other allegations, Chavez claimed Torres was liable for (1) negligently entrusting her house to her son, and (2) failing to exercise reasonable care as a homeowner for Chavez's protection. Torres responded with a motion for summary judgment, arguing as a matter of law that she owed no duty of care to Chavez to control the conduct of a third party on her property. After originally denying Torres' motion, the district court reheard arguments and granted summary judgment for Torres. The claims against Anderson are still pending. We accepted an interlocutory appeal of the court's summary judgment against Chavez to determine whether Chavez can proceed against Torres on these theories along with her other claims.

## DISCUSSION

{8}  We address two questions: (1) whether negligent entrustment applies to this case, and (2) whether, and under what circumstances, an owner or possessor of land has a duty to exercise reasonable care to control criminal conduct by a third party on her land and thereby protect visitors of the third party to her property.

### Negligent Entrustment

{9}  Chavez argues that Torres negligently entrusted her house to Anderson by providing him with a key and unlimited, unsupervised access to the home, when she knew or should have known that Anderson was dangerous, given her knowledge of his previous conduct in the home. Torres responds that negligent entrustment does not apply to the facts in this case as a matter of law. We agree with Torres.

{10}  New Mexico courts have had few opportunities to address negligent entrust-

ment. With one recent exception, the theory in New Mexico "has only been applied, or even discussed, in the context of chattel entrustments," usually automobiles. *Gabaldon v. Erisa Mortgage Co.,* 1997–NMCA–120, ¶ 30, 124 N.M. 296, 949 P.2d 1193, *cert. granted,* 124 N.M. 268, 949 P.2d 282; *see, e.g., McCarson v. Foreman,* 102 N.M. 151, 155–57, 692 P.2d 537, 541–43 (Ct.App.1984) (applying negligent entrustment of automobile). In *Gabaldon,* we applied negligent entrustment to real estate for the first time. We recognized a lessor's responsibility to exercise care in selecting a competent tenant to operate a water park which was replete with foreseeable risks to business visitors. *See Gabaldon,* 1997–NMCA–120, ¶¶ 44–45, 124 N.M. 296, 949 P.2d 1193. However, we limited the circumstances giving rise to a legal claim: "[t]he duty as we have defined it applies when the landlord is in effect requiring, or allowing, another to undertake an activity with known potential hazards for [the] landlord's economic benefit." *Id.* ¶ 46. The duty in *Gabaldon* only applied to cases "[w]here ... the property is designed, intended and required to be used for a particular purpose, and the use 'has highly dangerous potentialities involving a substantial risk to the general public, and such danger or risk to the public is such that it may be foreseen by the lessor.'" *Id.* (quoting *Benlehr v. Shell Oil Co.,* 62 Ohio App.2d 1, 402 N.E.2d 1203, 1209 (1978)).

{11}   Unlike the water park in *Gabaldon,* the Torres home is not alleged to possess such "dangerous potentialities." Torres is not being sued for entrusting high-risk property to an incompetent tenant who then causes injury. Torres is being sued simply for granting her son access to her own home. It would be a far stretch under the facts in this case to say that Anderson's use of the house caused injury to Chavez in the same way that use of a dangerous water park injured the plaintiff in *Gabaldon,* or use of an automobile by a drunken driver causes injury in traditional negligent entrustment doctrine. Thus, even as recently expanded by this Court, a theory of negligent entrustment does not fit the facts alleged in this case.

{12}   Chavez relies heavily on *Madsen v. Scott,* 1998–NMCA–092, 125 N.M. 475, 963 P.2d 552, *cert. granted,* 125 N.M. 654, 964 P.2d 818, but this opinion is of no help to Chavez either. In *Madsen,* a homeowner engaged a housesitter who had an interest in guns. Before leaving on a trip, the homeowner authorized the housesitter to invite guests to the premises but with instructions not to engage in wild parties. *See id.* ¶¶ 3–4. The housesitter invited friends over, and one such visitor was accidentally shot to death by another while playing with a gun. *See id.* ¶¶ 5–6. This Court held that the employment relationship made the housesitter's visitors the homeowner's visitors, and therefore, the homeowner owed a duty to the guests of the housesitter under a theory of respondeat superior. *See id.* ¶ 28. But *Madsen* was not decided on a theory of negligent entrustment, and we decline to apply it broadly towards that end.

{13}   Having cited no applicable legal authority to support a theory of negligent entrustment in this context, Chavez fails to persuade us that she has such a claim against Torres. Accordingly, the district court properly granted summary judgment in Torres' favor with respect to this portion of Chavez's claim.

## Torres' Duty to Exercise Reasonable Control Over Anderson's Conduct in Her Home

{14}   In addition to a theory of negligent entrustment, Chavez argues that Torres owed a duty as a homeowner to exercise reasonable care for her protection while she was in Torres' house as Anderson's guest. Thus, we must decide whether Torres' general duty to maintain her property in a safe condition included a responsibility to prevent her son's foreseeable criminal activity to protect her son's visitors.

{15}   Torres first argues lack of preservation. Although Chavez raised this theory in her complaint, Torres contends that Chavez then merged the theory into negligent entrustment and failed to preserve it for appeal as a discrete legal claim. We do not agree. Chavez briefed the issue below in her memorandum in opposition to summary judgment,

and she specifically cited to the district court UJI 13–1320 NMRA 1999, which outlines a landowner's duty to keep a premises safe for a visitor including the protection of visitors from dangers presented by the acts of a third person. Chavez also cited to the court *Reichert v. Atler*, 117 N.M. 623, 875 P.2d 379 (1994), the leading New Mexico case on point, as well as multiple sections of the Restatement (Second) of Torts. In our view, Chavez adequately preserved the issue of Torres' duty as landowner, to which we now turn our discussion.

{16} According to Chavez, Torres should not have allowed her son unsupervised, unlimited access to her house because it was foreseeable that he would harm Chavez on the premises, given what she knew about Anderson's propensity for alcohol abuse and violence. This duty of care became even more acute, according to Chavez, once Torres was allegedly made aware that Anderson had a gun and was assaulting Chavez on her property.

{17} Under New Mexico's Uniform Jury Instructions, owners and occupiers of land who fail to exercise ordinary care for the safety of their visitors may be liable for injuries proximately caused, and that duty of care includes "a foreseeable risk that a third person will injure a visitor." UJI 13–1320; *see* UJI 13–1309 NMRA 1999. This duty exists whether or not the danger is obvious to the victim. *See* UJI 13–1309; *Klopp v. Wackenhut Corp.*, 113 N.M. 153, 157, 824 P.2d 293, 297 (1992). UJI 13–1320 is the child of our Supreme Court's opinion in *Reichert*, 117 N.M. 623, 875 P.2d 379, which held a bar owner liable for failing to exercise reasonable care to protect a patron from the violence of another patron. *See id.* at 626, 875 P.2d at 382. It is noteworthy that the bar employee had ample information to know of the danger one patron presented to the other. *See id.* In recognizing the owner's duty of care and applying traditional principles of comparative fault to both the owner and the two patrons, the Court emphasized "the importance of the duty of the owner or operator of a place of business to prevent the harmful conduct of a third party[,]" and held that the owner's failure to protect would be compared to the fault of the third-party assailant as part of the jury's allocation of proportionate responsibility. *Id.*

{18} Chavez has not directed our attention to any New Mexico case indicating this duty has been extended to the owners of noncommercial, private property or homeowners. We do observe, however, that the language in the UJI is not restricted to a business or commercial context. *See* UJI 13–1309; UJI 13–1320. We must look elsewhere for guidance as to whether this duty should carry over to a homeowner like Torres.

{19} Chavez directs our attention to Section 318 of the Restatement which states, in part, that

[i]f [an] actor permits a third person to use land . . . in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control.

Under Section 318, the duty of a possessor of land to control the conduct of a third-party visitor applies to injury caused by the third party on the property, as opposed to a dangerous physical condition on the premises. *See Morgan v. Perlowski*, 508 N.W.2d 724, 727–28 (Iowa 1993) (applying Section 318 of the Restatement to a homeowner to control the conduct of visitors in order to prevent harm to other visitors in the house), *abrogated on other grounds by Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602, 603–04 (Iowa 1998); *Kinsey v. Bray*, 596 N.E.2d 938, 940 (Ind.Ct.App.1992) (citing Section 318 and recognizing a homeowner's duty to exercise reasonable care to protect guests on the property from reasonably foreseeable violent acts of a third party); *cf. Youngblood v. Schireman*, 53 Wash.App. 95, 765 P.2d 1312, 1317–18 (1988) (citing Section 318 and recognizing a homeowner's duty to control the

conduct of a third party but finding no "presence" of sleeping homeowners who were unaware of the danger).

{20} When a property owner has a special relationship with a third person that gives him the ability to control the third person's behavior or has a special relationship with a person threatened with injury that gives that person an entitlement to protection, "a considerable number of cases have imposed an affirmative duty to control the conduct of third persons to prevent danger to others." Fowler V. Harper & Posey M. Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 893–904 (1934) (discussing the evolution of the affirmative duty to control the conduct of another in .chattel entrustment, parent-child relations, joint enterprises, persons under protection of the defendant, carrier-passenger relations, use of land by business visitors, and other situations). Section 318 creates such a special relationship. A special relationship under Section 318 may arise between the possessor of land and those allowed on the land because of the possessor's power of control over those allowed to enter. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 57, at 392 (5th ed.1984). If so, the possessor has a duty to exercise reasonable care for the protection of others, including "the power of control of expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands." Keeton, *supra*, § 61, at 428; *see also* 3 Fowler V. Harper et al., *The Law of Torts* § 18.7, at 736 n. 10, 739 n. 17 (1986) (discussing Section 318 of the Restatement). The special relationship may arise under Section 318 when the landowner knew or should have known of the ability to control persons causing injury to a visitor and the necessity and opportunity to exercise such control, and if the facts establish a threshold showing of such knowledge, then the jury decides these questions. *See Morgan*, 508 N.W.2d at 728 (holding that under Section 318 of the Restatement, and under the particular facts of the case, it was for the jury to decide whether the party host knew or should have known of the ability to control the persons causing the injury and the neces-

sity and opportunity to exercise such control in light of the risk presented); *Kinsey*, 596 N.E.2d at 939–40.

{21} No New Mexico case has directly considered Section 318 of the Restatement. However, we did discuss Section 318 of the Restatement favorably, if briefly, in our recent *Gabaldon* opinion. *See Gabaldon*, 1997–NMCA–120, ¶ 36, 124 N.M. 296, 949 P.2d 1193. Our Supreme Court has held that owners and occupiers of land must exercise reasonable care for their visitors when it abolished the invitee-licensee distinction previously in existence. *See Ford v. Board of County Comm'rs*, 118 N.M. 134, 139, 879 P.2d 766, 771 (1994); *see also* Samuel E. Tuma, Note, *Tort Law—Occupiers of Land Must Exercise Reasonable Care For All Lawful Visitors: Ford v. Board of County Commissioners of the County of Dona Ana*, 25 N.M.L.Rev. 373 (1995). In light of UJI 13–1309 and UJI 13–1320 and our Supreme Court's opinion in *Reichert*, 117 N.M. 623, 875 P.2d 379, and considering the authority from other jurisdictions and secondary sources cited above, we view Section 318 of the Restatement with favor. We assume, without deciding, that in an appropriate case New Mexico courts would make it part of our common law of torts, and therefore we measure the facts of this case against it.

{22} One critical question under Restatement Section 318 is notice; whether the landowner "knows," "has reason to know," "or should know" of the necessity, ability, and opportunity to control the third party's dangerous activities on her land. In her motion for summary judgment, Torres claims not to have been aware of any danger to Chavez, and thus, she disclaims any duty of care under Section 318. Accordingly, our initial inquiry is whether Chavez created a genuine issue of material fact sufficient to defeat summary judgment on the question of notice of the danger.

{23} Viewing the factual allegations most favorably to Chavez, it is clear that she succeeded on this point. Torres was made aware that Anderson and Chavez were present in her home. In her telephone conversation with Torres, Chavez allegedly informed

Torres that Anderson had a gun, and she tried to tell Torres that something was wrong and that she needed help. Allegedly, Torres ignored what Chavez was attempting to communicate, and simply hung up the phone. Under Section 318, these allegations, if believed by a jury and depending on how they are interpreted, might create an element leading to a duty in a property owner "to exercise reasonable care so to control the conduct of [Anderson] as to prevent him from intentionally harming [Chavez]." The telephone conversation, supplemented by everything else Torres knew about her son, goes a long way toward enabling a jury reasonably to conclude that Torres knew or should have known "of the necessity and opportunity for exercising such control" as well as "the ability to control" Anderson's conduct through reasonable measures. Restatement, *supra*, § 318(a) & (b). The Restatement recognizes the "peculiar ability" of an owner to control either land or a chattel which the third party knows can be used only with the owner's permission. *See id.* cmt. a. The Restatement imposes a particular duty on the owner to anticipate trouble by virtue of what the owner knows or should know, and to take reasonable measures to control the third party in reliance thereon. Restatement, *supra*, § 318 cmt. c.

{24} However, we must address one further point. The text of Restatement Section 318 refers to the property owner's presence on the property as a condition to imposing a duty to control third-party conduct: "[the owner] is, if *present*, under a duty to exercise reasonable care so to control the conduct of the third person." (Emphasis added). Torres, of course, was not present either when Anderson and Chavez first entered the house or later during the assaults, and therefore, Torres argues that the duty under Section 318 does not apply on its face. Chavez responds, quite correctly, that in drafting Section 318, the American Law Institute inserted a caveat in which it expressly left open the possibility of a duty "where the actor, although not present, is in the vicinity, is informed of the necessity and opportunity of exercising such control, and can easily do so." Restatement, *supra*, § 318, Caveat. In other words, there may be situations in

which the homeowner's duty of care extends beyond physical presence on the property, and again we assume, without deciding, that such a duty might arise in New Mexico under appropriate circumstances. We are thus brought to the pivotal question, which is whether Chavez made the necessary factual assertions to fall within such an exception to the presence requirement under Section 318 and create a genuine issue of material fact for the jury.

{25} The operative phrases of the caveat in Section 318 include the homeowner being "in the vicinity," being "informed" of the necessity and opportunity of exercising control, and being situated so that the homeowner "can easily do so." We have already determined that Chavez created a triable issue of fact regarding notice of the danger and thereby notice of necessity. But Chavez tells us nothing about whether Torres' place of work was in the "vicinity" of her home, and we are told nothing about whether Torres, from her absentee position at work, could "easily" have exercised control over Anderson's criminal activities in her house (even arguably with the intervention of the police). Both in her summary judgment submittals below and her legal briefs to this Court, Chavez ignores the factual predicate necessary for us to reach this question. We are unable to decide whether this case fits within the narrow scope of situations under Section 318 in which a homeowner, although not physically present, might nonetheless have a duty of reasonable care to control tortious conduct within the home. On this record, therefore, we have no choice but to affirm the summary judgment of the district court. *See Pierce v. Staley*, 587 N.W.2d 484 (Iowa 1998) (reversing a jury verdict for plaintiff under Section 318 because the evidence was insufficient to demonstrate the essential elements of notice, opportunity to act, and vicinity even assuming the duty might be applied to a non-present homeowner).

## CONCLUSION

{26} We affirm the entry of summary judgment in favor of Torres against Chavez

and remand for further proceedings consistent with this opinion.

{27} IT IS SO ORDERED.

PICKARD, C.J., and DONNELLY, J., concur.