Certiorari Granted, January 17, 2013, No. 33,949
Certiorari Granted, January 28, 2013, No. 33,896

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:  2013-NMCA-020

Filing Date: October 12, 2012

Docket No. 30,421 consolidated with No. 30,578

JAMES RODRIGUEZ, Individually and as
Representative of the Estates of JANELL L.
RODRIGUEZ and DAVID RODRIGUEZ,
Deceased, LEANN AGUILAR, DOMENIC
A. RODRIGUEZ, JUAN M. TERRAZAS,
Individually and as Representative of the Estate
of VIVIANA E. TERRAZAS, Deceased,
LUDIVINA TERRAZAS ENRIQUEZ, and
BILLY J. TRUJILLO, as Next Friend of
ISAIAH TRUJILLO,

      Plaintiffs-Appellants,

v.

DEL SOL SHOPPING CENTER ASSOCIATES,
L.P., a/k/a DEL SOL SHOPPING CENTER,
BGK PROPERTIES, INC., BGK REALTY, INC.,
BGK PROPERTY MANAGEMENT, L.L.C.,
and BGK EQUITIES III, INC.,

      Defendants-Appellees.

and

MARIA C. BUSTAMANTE, as Representative
of the Estate of MICHAEL SOLCHENBERGER,
and his wife LYDIA SOLCHENBERGER, Deceased,

      Plaintiff-Appellant,

v.

1

**BGK PROPERTIES, INC., DEL SOL SHOPPING
CENTER ASSOCIATES, L.P., and CONCENTRA
HEALTH SERVICES, INC.,**

**Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Clay P. Campbell and Sarah M. Singleton, District Judges**

Law Offices of Beatrice Lockhart
Beatrice Castellano Lockhart
Santa Fe, NM

Joe Cruz Castellano, Attorney at Law
Joe Cruz Castellano
Santa Fe, NM

Watts Guerra Craft L.L.P.
John G. Escamilla
Edinburg, TX

Gaddy Jaramillo Lawyers
David Jaramillo
Albuquerque, NM

Attorneys for Appellants
James Rodriguez, et al.
O'Friel and Levy, P.C.
Daniel J. O'Friel
Aimee Bevan
Santa Fe, NM

Attorneys for Appellant
Maria C. Bustamante

Madison, Harbour & Mroz, P.A.
Ada B. Priest
M. Eliza Stewart
Albuquerque, NM

Attorneys for Appellees
BGK Properties, Inc. and Del Sol
Shopping Center Associates, L.P.,
BGK Realty, Inc. and BGK Equities

III, LLC

Civerolo, Gralow, Hill & Curtis, P.A.
Lisa Entress Pullen
M. Clea Gutterson
Albuquerque, NM

Attorneys for Appellees
BGK Property Management, LLC

Rammelkamp, Muehlenweg & Cordova, P.A.
Lara White Davis
Albuquerque, NM

Attorney for Appellee
Concentra Health Services, Inc.

Brown & Gay, P.C.
Remo E. Gay, Jr.
Melissa A. Brown
Albuquerque, NM

Attorneys for Appellee
Concentra Health Services, Inc.

## OPINION

**HANISEE, Judge.**

**{1}** On March 17, 2006, a pick-up truck in the parking lot of Del Sol Shopping Center (Del Sol) in Santa Fe suddenly accelerated—due to a combination of driver and vehicle failure—and hurtled through one of Del Sol's side-by-side business-front glass walls and into the Concentra Medical Clinic (Concentra). Tragically, a mother and her son were struck and killed inside, along with a medical receptionist assisting them at the time. Six other Concentra patients were also seriously injured by the runaway truck. The legal aftermath of the calamity included separate premises liability actions filed by the decedents' estates, the surviving victims and their families (collectively, Plaintiffs). Each lawsuit alleged that the owners and operators of Del Sol (collectively, Defendants) negligently contributed to the occurrence by, among other things, failing to adequately post traffic signage and erect additional physical barriers between the parking lot and shopping center. Two district courts granted Defendants' motions for summary judgment, each declaring that Defendants had no duty to protect Plaintiffs inside the building from criminally reckless drivers because the sequence of events was unforeseeable as a matter of law. We previously consolidated Plaintiffs' appeals from the separate orders of summary judgment and now affirm. We do

3

so, however, not based on the foreseeability-driven duty analysis employed by the district courts, but based on the policy-driven duty analysis advanced by the Restatement (Third) of Torts and Plaintiffs, and recently embraced by our New Mexico Supreme Court in *Edward C. v. City of Albuquerque*, 2010-NMSC-043, ¶ 15, 148 N.M. 646, 241 P.3d 1086.

**Standard of Review**

**{2}**     At the outset, we acknowledge that under New Mexico law summary judgment is "to be used with great caution," and is proper in only two circumstances:  (1) "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law," or (2) "when the material facts are not in dispute and the only question to be resolved is the legal effect of the facts."  *Monett v. Doña Ana Cnty. Sheriff's Posse*, 114 N.M. 452, 454, 840 P.2d 599, 601 (Ct. App. 1992) (internal quotation marks and citations omitted).  The issue presented here is of the latter type, which compels our resolution of the legal question of duty in the context of the established material facts.  Accordingly, we apply de novo review.  *See Cable v. Wells Fargo Bank N.M., N.A. (In re Cable Family Trust)*, 2010-NMSC-017, ¶ 9, 148 N.M. 127, 231 P.3d 108 ("An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." (internal quotation marks and citation omitted)); *see also Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 (stating that "[w]hether a duty exists is a question of law" to be reviewed de novo).

## I.     BACKGROUND

**{3}**     Undisputed evidence demonstrates that Rachel Ruiz—who had been advised not to operate motor vehicles by physicians treating her seizure disorder—was nonetheless driving the pick-up truck that crashed into Del Sol and Concentra.  Ms. Ruiz was also aware that the truck had previously experienced mechanical failure, including both sudden acceleration and loss of brake controls.  While driving the truck and simultaneously disregarding her own and its pre-known conditions, Ms. Ruiz steered into Del Sol's parking lot from St. Michael's Drive.  She reportedly intended to make an in-person dental appointment at "Perfect Teeth," one of the many adjacent tenant businesses located within Del Sol.

**{4}**     As Ms. Ruiz drove along a 600-foot entrance straightaway within the Del Sol parking lot, the truck's accelerator apparently became stuck while depressed and its brakes failed to engage.  Ms. Ruiz maintained she then experienced a "baby seizure," causing her to abruptly lose consciousness.  The unbridled truck continued accelerating, veered slightly to the left, and vaulted the perpendicular six-inch curb at the end of the straightaway.  Its leftward drift caused the truck to narrowly miss a concrete overhang support pillar centered directly at the end of the straightaway.  It then sped across a ten-foot wide pedestrian sidewalk, snapped a metal handrail, and crashed through Concentra's floor-to-ceiling glass wall.  It finally came to rest—after striking Plaintiffs—more than twelve feet into Concentra's reception area.

**{5}**     The legal aftermath of the tragedy resulted in these current lawsuits and separate

4

criminal proceedings, during which Ms. Ruiz pleaded no contest to three counts of vehicular homicide and six counts of great bodily injury by vehicle, and was imprisoned. These appeals follow the issuance of separate written orders of summary judgment by district court judges who first held hearings and considered pleadings, exhibits, and arguments of counsel. We review the propriety of those determinations below.

**Current State of New Mexico's Legal Duty Analysis**

**{6}** The core question presented in this appeal is what, if any, duty is owed by Defendants in the context of the facts recited above. Before answering, we briefly summarize the evolution of New Mexico's legal duty analysis, and state what we consider to be the current test. The Solchenberger Plaintiffs assert in their brief-in-chief that New Mexico law has been "inconsistent regarding the role of foreseeability in duty determinations." To this end, they cite with chronologic specificity our jurisprudence following the seminal case on this topic, *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928). Our own review of these cases has likewise discerned vacillation between the different constructions by which duty can be recognized and measured. The *Palsgraf* debate, written by Chief Judge Cardozo on behalf of the majority and with Judge Andrews penning the dissent, specifically addressed the application of foreseeability within the legal question of duty, and underscored the tension between the differing roles of judges and juries in resolving negligence-based lawsuits. In short, Judge Cardozo prevailed in his effort to incorporate foreseeability within the strictly legal determination of duty. *See Palsgraf*, 162 N.E. at 100 ("[T]he orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty."). He did so despite the separate application of foreseeability within the element of causation—a quintessential question of fact resolved by juries. *See Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 20, 140 N.M. 596, 145 P.3d 76 ("[A]ny consideration of foreseeability of injury is intertwined with the concept of proximate causation of that injury."); *Baker v. Fryar*, 77 N.M. 257, 262, 421 P.2d 784, 787 (1966) ("We recognize that proximate cause is a question of fact to be determined by the factfinder."). Judge Andrews advocated the divergent viewpoint in his dissent, maintaining that "[d]ue care is a duty imposed on each one of us to protect society from unnecessary danger," and that any limitation of duty should be derived from matters of effective policy rather than the more nebulous legal notion of foreseeability. *See Palsgraf*, 162 N.E. at 102, 103 ("[B]ecause of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics.").

**{7}** Our New Mexico Supreme Court first asserted its adoption of the *Palsgraf* majority's "foreseeable plaintiff" test for determining duty in *Ramirez v. Armstrong*. 100 N.M. 538, 541, 673 P.2d 822, 825 (1983) ("If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant."), *overruled in part by Folz v. State*, 110 N.M. 457, 797 P.2d 246 (1990). But *Ramirez*'s imprecise phrasing of the express *Palsgraf* holding was later criticized by New Mexico Supreme Court Chief Justice Ransom in a particularly enduring special concurrence. *See Solon v. WEK Drilling*

5

*Co.*, 113 N.M. 566, 572, 829 P.2d 645, 651 (1992) (Ransom, C.J., specially concurring) ("Chief Judge Cardozo held in *Palsgraf* that there can be no duty in relation to another person *absent* foreseeability . . . , it does not follow that duty necessarily is present if risk of injury to that other person *is* foreseeable from one's acts and omissions. . . . It is unfortunate that in *Ramirez* . . . this Court stated [otherwise]."). Chief Justice Ransom additionally wrote that "the crux of the duty analysis that is required . . . is not a factual foreseeability determination, but rather it is a legal policy determination." *Id.*; *accord Calkins v. Cox Estates*, 110 N.M. 59, 67, 792 P.2d 36, 44 (1990) (Ransom, J., dissenting) ("More often, duty as a matter of law turns not on an absence of the fact issue of foreseeability, but rather the policy issue of whether it is reasonable to impose a duty to avoid a risk of injury which, although foreseeable, is remote."). Despite these protests, our appellate courts incorporated the primary determination of foreseeability into the legal question of duty. *Calkins*, 110 N.M. at 61, 792 P.2d at 38 ("In determining duty, it must be determined that the injured party was a foreseeable plaintiff—that he was within the zone of danger created by [the] respondent's actions; in other words, to whom was the duty owed?"); *Solon*, 113 N.M. at 569-70, 829 P.2d at 648-49 (recognizing that New Mexico's duty analysis "limits a tortfeasor's liability to the foreseeable plaintiff and excludes it where the plaintiff is unforeseeable").

**{8}** Justice Ransom's view has persisted, however, and even gained varying degrees of traction as our jurisprudence evolved. For example, since *Calkins* and *Solon*, New Mexico courts have applied foreseeability in the following ways:

(1) as the primary consideration in a legal duty analysis, *see, e.g.*, *Bober v. N.M. State Fair*, 111 N.M. 644, 649, 808 P.2d 614, 619 (1991) ("[O]nce a duty is established, the foreseeability of harm governs the scope of that duty." (internal quotation marks and citation omitted)); *Monett*, 114 N.M. at 459, 840 P.2d at 606 ("[T]he issue of duty . . . turn[s] on the question of foreseeability."); *Reichert v. Atler*, 117 N.M. 623, 626, 875 P.2d 379, 382 (1994) ("The owner's duty to protect patrons extends to *all* foreseeable harm . . . ." (emphasis added));

(2) as a necessary element alongside policy considerations, *see, e.g.*, *Quality Pontiac*, 2003-NMSC-018, ¶ 9, 134 N.M. 43, 73 P.3d 181 (2003) ("The Court of Appeals has similarly recognized that duty requires analysis of both foreseeability and policy.")[1]; *Blake v. Pub. Serv. Co. of N.M.*, 2004-NMCA-002, ¶ 7, 134 N.M. 789, 82 P.3d 960 ("Determination of duty is based in part on whether the injury to the plaintiff was

---

[1] Justice Bosson specially concurred in *Quality Pontiac*, giving renewed voice to the criticism that New Mexico's use of foreseeability as a part of the legal duty inquiry is a "legal fiction for restricting or expanding liability." 2003-NMSC-018, ¶ 40 (internal quotation marks and citation omitted). Justice Bosson suggested that "[p]erhaps policy issues like remoteness, aided by indications of legislative intent, are the better tools for shaping duty, and we should leave the foreseeable plaintiff for the jury." *Id.* ¶ 41.

6

foreseeable. . . . [Yet], policy also determines duty."); *Chavez v. Desert Eagle Distrib. Co. of N.M., LLC*, 2007-NMCA-018, ¶ 16, 141 N.M. 116, 151 P.3d 77 ("The initial step in a common law duty analysis is to determine whether a particular plaintiff and a particular harm are foreseeable[;] . . . we then determine whether policy considerations preclude the imposition of a common law duty in a particular case."); and

(3) relegated to the less resolutive status of a "false jury issue," which is ripe for summary judgment only when a court determines that no rational trier of fact could find the victim foreseeable, *see Torres v. State*, 119 N.M. 609, 612-13, 894 P.2d 386, 389-90 (1995) (declaring for the first time—with Justice Ransom at last having the opportunity to serve as author for the majority—that "policy determines duty").

**{9}** Most recently, this Court—in an opinion that both district courts in the present cases credited as being legally dispositive—echoed and applied the *Ramirez*-born understanding that "foreseeability is a critical and essential component of New Mexico's duty analysis." *Romero v. Giant Stop-N-Go of N.M., Inc.*, 2009-NMCA-059, ¶¶ 7-8, 146 N.M. 520, 212 P.3d 408 (alteration, internal quotation marks, and citation omitted) (holding that purposeful, targeted criminal behavior in the parking lot of a convenience store was unforeseeable as a matter of law). In applying *Romero*, both district courts in the instant case concluded that this accident "was not foreseeable" as a matter of law and therefore no duty existed. The district court judge to first consider the question of duty in these parallel cases explained in his memorandum opinion and order that

> [A] finding of foreseeability would require anticipation of a remarkable confluence of events. Defendants would have had to foresee that a woman, diagnosed with a seizure disorder and advised by her doctor not to drive, would nevertheless decide to drive, that her vehicle would malfunction and the stress of the malfunctioning vehicle would cause her to suffer from a mini-seizure, which would result in her vehicle swerving, jumping a curb, crossing a ten foot covered sidewalk and missing a concrete pillar, and crashing through the front window of a business.[2]

Joined soon thereafter by a second district judge who reached the same result on the same

---

[2] We note that District Judge Clay Campbell separately supported his duty determination by policy considerations. *Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, No. CV-2006-01855 (1st Jud. Dist. Ct. Mar. 18, 2010) ("[T]he Court determines that neither foreseeability nor considerations of policy, nor a combination of the two, can support the imposition of duty here.").

legal basis[3], the now-combined cases serve to illustrate the fallibility of an overly foreseeability-dependent analysis by district courts tasked with determining order in a convoluted area of law, as Justice Bosson warned in his special concurrence in *Quality Pontiac*. 2003-NMSC-018, ¶ 42 ("When we attempt to define legal duty in terms of a foreseeable plaintiff, it is all too tempting to use 'foreseeability' as a surrogate for result-oriented conclusions."); *accord Marquez v. Gomez*, 116 N.M. 626, 631, 866 P.2d 354, 359 (Ct. App. 1991) ("The existence and scope of duty, as questions of law, should not be scrutinized with such specificity that the factual issue of negligence is subsumed."). This dilemma is readily apparent in this case, where minutia-specific foreseeability analysis overwhelms the ascertainability of legal duty. For "if we look into the past of *any* given event, there is an infinite number of events, each of which is a necessary condition of the given event . . . ." *See* H. L. A. Hart & A. M. Honoré, *Causation and Responsibility*, in *Philosophy of Law: Classic and Contemporary Readings* 307, 309 (Larry May & Jeff Brown, eds., 2009) (emphasis added); *see also*, Edward N. Lorenz, *The Essence of Chaos* 181 (1995) ("If a single flap of a butterfly's wings can be instrumental in generating a tornado, so also can all the previous and subsequent flaps of its wings, as can the flaps of the wings of millions of other butterflies, not to mention the activities of innumerable more powerful creatures, including our own species.").

{10} Fortunately, for the sake of clarity in the law and ease of analysis, the legal duty test in New Mexico appears to have achieved homeostasis, as recently written by our New Mexico Supreme Court in *Edward C.*, 2010-NMSC-043. In reversing the Court of Appeals' judgment—"that ordinary care was the applicable standard [of duty] because [the plaintiff] and his injury were foreseeable"—our Supreme Court unanimously, and for the first time, adopted an approach more consistent with the Restatement (Third) of Torts than with *Palsgraf*, and that "disapprov[es] the use of foreseeability to limit liability." *Edward C.*, 2010-NMSC-043, ¶ 18 (alteration omitted) (citing Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 cmt. j (2010)). The ensuing legal duty test as articulated in *Edward C.* now reads as follows:

> The question of the existence and scope of a defendant's duty of care is a legal question that depends on the nature of the . . . activity in question, the parties' general relationship to the activity, and public policy considerations. . . . [It] is a question [primarily] of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law.

2010-NMSC-043, ¶ 14 (internal quotation marks and citation omitted).

---

[3] District Court Judge Sarah Singleton, in her order granting summary judgment to Defendants, advocated her own opinion that "the foreseeability analysis in the Restatement Third of Torts is the correct way to analyze foreseeability" under duty. Her grant of summary judgment was thus based not upon independent legal acumen, but rather the responsibility to apply what she perceived to be binding precedent.

**{11}** This appears generally to be the standard sought by Plaintiffs, particularly the Solchenberger Plaintiffs, who emphasized both in briefing and in oral argument the need for clarity in what has become an increasingly complex area of law.[4] We recognize that it is not the job of an intermediate appellate court to cement or dismiss legal nuances that a higher tribunal has oft employed. Rather, it is the job of the authoring court to discount antiquated legal relics within its own body of jurisprudence, when it sees fit to do so. But, despite the lack of an express dismissal of the historic application of foreseeability to the question of legal duty in New Mexico by the *Edward C.* Court, we believe its import is plain enough:

> Foreseeability . . . is but one factor to consider when determining duty and not the principal question. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 cmt. j (2010) (disapproving the use of foreseeability to limit liability in preference for "articulat[ing] polic[ies] or principle[s] . . . to facilitate more transparent explanations of the reasons for a no-duty [or limited-duty] ruling and to protect the traditional function of the jury as factfinder"). Instead, "duty is a policy question . . . ."
>
> The approach we take is consistent with the approach suggested by the American Law Institute. . . . The American Law Institute notes that courts can "render a judgment about that category of cases" under "the rubric of duty" taking "into account factors that might escape the jury's attention in a particular case, such as the overall social impact of imposing a significant precautionary obligation on a class of actors." "Such a categorical determination . . . has the benefit of providing clearer rules of behavior for actors who may be subject to tort liability and who structure their behavior in response to that potential liability."

2010-NMSC-043, ¶¶ 18, 21 (alterations in original) (internal citations omitted). Incidentally, the subjugation of foreseeability into a mere factor in the analysis of legal duty, and the concomitant shift toward a policy-driven duty analysis, seems to have finally adopted the approach articulated by Justices Ransom and Bosson. We also trumpet the impact of *Edward C.* to promote uniformity of analysis to the legal question of duty frequently encountered by this Court and the district courts around our State, which have even since *Edward C.* continued to diverge based on conflicting precedent. *Compare Bowen v. Mescalero Apache Tribe*, No. 29,625, slip op. at 6 (N.M. Ct. App. Jan. 27, 2011)

---

[4] Curiously, the parties on appeal did not cite *Edward C.*, perhaps based upon its resolution of a question of duty within a uniquely narrow arena of law—baseball park liability. The facts of that case and the determination of the Court regarding the duty owed to baseball spectators are situationally distinct from the analysis of duty herein. But we conclude that the manner in which duty is defined by *Edward C.* is applicable, particularly given its departure from the many prior incorporations of foreseeability as the primary determinant of duty.

("[D]etermining whether a duty exists requires two steps: the first step is to consider whether there was foreseeability as to a particular plaintiff and a particular harm, and the second step is to examine whether public policy reasons support the imposition of a duty." (citing *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 30, 142 N.M. 583, 168 P.3d 155)), *cert. granted*, 2011-NMCERT-004, 150 N.M. 649, 264 P.3d 1172, *with Vargas v. Cruz*, No. 30,884, slip op. at 1 (N.M. Ct. App. June 19, 2012) ("Foreseeability is one factor to consider when determining duty, however, '[p]olicy is the principal factor in determining whether a duty is owed and the scope of that duty.'" (alteration in original) (citing *Edward C.*, 2010-NMSC-043, ¶¶ 14, 18)). Moreover, in cases such as these currently at bar, a definitive framework could best advance the consistent and transparent application of law to sudden and unimaginable tragedies, to the benefit of litigants, businesses seeking clear canons for responsible behavior, and judicial efficiency alike.

II.  **DISCUSSION**

**{12}**   Having clarified the current state of our legal duty analysis, we now frame the question on appeal broadly, as did our Supreme Court in *Edward C.*, and proceed with legal analysis without any undue focus on the factor of foreseeability: What duty should owner/occupants of a shopping center in New Mexico have to protect business invitees within its buildings from vehicles that depart the confines of designated parking areas? *See* 2010-NMSC-043, ¶ 14 ("What duty should owner/occupants of a baseball stadium in New Mexico have to protect spectators from projectiles that leave the field of play?"). We note the wisdom of defining and analyzing the duty broadly within context, rather than as manifested by specific conduct, such as a duty to erect bollards, barriers, speed bumps, concrete walls, etc.:

> [Equating] the concept of "duty" with such specific details of conduct [posting warning signs, removing obstructions, installing traffic control devices, fixing potholes, and the like] is unwise. Attempting to define or evaluate conduct in terms of duty tends to rigidify the concept of negligence—a concept which, by definition, must vary from case to case . . . . [T]he problems of "duty" are sufficiently complex without subdividing it to cover an endless series of details of conduct. . . . [D]uty [should] remain[] constant, while the conduct necessary to fulfill it varies with the circumstances.

*Bober*, 111 N.M. at 649, 808 P.2d at 619 (second alteration in original) (citation omitted).

**{13}**   It is well established that the general duty an owner/occupier owes an invitee is one of ordinary care. *See Ford v. Bd. of Cnty. Comm'rs*, 118 N.M. 134, 139, 879 P.2d 766, 771 (1994) ("A landowner or occupier of premises must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the

10

risk."); *see also* UJI 13-1309 NMRA ("An [owner] [occupant] owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor [, whether or not a dangerous condition is obvious].").  Ordinary care is that "which a reasonably prudent person would use in the conduct of the person's own affairs . . . [and] varies with the nature of what is being done." UJI 13-1603 NMRA.  The duty of an owner/occupant to exercise ordinary care can even include the protection of visitors against acts of third parties in circumstances where knowledge of a specific danger is apparent.  But whether an established duty in such an instance has been breached is a question of fact that *juries* are asked to resolve by considering the following instruction:

> If an [owner] [occupant] breaches the *duty to use ordinary care to keep the premises safe for use by a visitor, resulting in injury to the visitor from the acts of a third person*, the [owner's] [occupant's] breach of duty is to be compared with the conduct of the third person who actually caused the injury to the visitor [, as well as with the visitor's own fault,] in order to determine the [owner's] [occupant's] proportionate degree of fault.  *The [owner's] [occupant's] duty to protect visitors arises from a foreseeable risk that a third person will injure a visitor* and, as the risk of danger increases, the amount of care to be exercised by the [owner] [occupant] also increases.  Therefore, the proportionate fault of the [owner] [occupant] is not necessarily reduced by the increasingly wrongful conduct of the third person.

UJI 13-1320 NMRA (emphasis added).  This jury instruction derives from *Reichert*, which recognized "the importance of the duty of the owner or operator of a place of business to prevent the harmful conduct of a third party."  117 N.M. at 626, 875 P.2d at 382.  In the *Reichert* case, Justice Ransom was careful to note that the "duty to protect visitors arises from the *likelihood* that a third party will injure a visitor . . . regardless of whether that harm results from intentional or negligent conduct." *Id.* (emphasis added).

**{14}**    The question here, however, is not whether Defendants bore a general duty of ordinary care to Plaintiffs—they most certainly did.  The gravamen of our legal inquiry asks whether the *scope* of the duty of ordinary care for owner/occupiers in this circumstance incorporated the protection of invitees inside buildings from third-party vehicles uncontrollably straying from adjacent parking lots. *See Provencio v. Wenrich*, 2011-NMSC-036, ¶ 16, 150 N.M. 457, 261 P.3d 1089 ("In a negligence action, . . . the court must first find an actionable duty of care and then define the nature and scope of that duty.").  In answering that query, we consider (1) "the nature of the . . . activity in question," (2) "the parties' general relationship to the activity," and (3) "public policy." *See Edward C.*, 2010-NMSC-043, ¶ 14.

**Nature of the Activity and the Parties' Relationship Thereto**

**{15}**    The nature of the activity here—the provision of goods and services to the public within a shopping center and adjacent parking lot—bears no inherent risk of vehicle-

11

pedestrian accidents *within* the related businesses. Certainly, we recognize that Defendants' facility was purposefully designed to attract the general public (and their vehicles) to both visit businesses within Del Sol and park vehicles in its parking lot. The duty of ordinary care thus required Defendants—who elected to provide a parking lot for public convenience—to construct and maintain parking facilities in an ordinarily acceptable manner. Inevitably, some of the visiting vehicles and pedestrians were likely to collide while commingling in the parking lot. But we see nothing about the nature of the activity here—awaiting medical services within Concentra Medical Clinic near Del Sol's parking area—that would unacceptably expose patrons to the risk of vehicle collisions *inside* the building such as the risk found to exist in *Edward C.*, 2010-NMSC-043, ¶ 41 (acknowledging that flying projectiles from the field of play are an inherent risk of baseball to be anticipated—even desired—by the spectator).

**{16}** The absence of apparent and inherent danger to patrons within Del Sol businesses militates against the inclusion of a duty to prevent injury from runaway vehicles within the scope of what is ordinarily owed to Del Sol patrons in this case. The combined record in these cases reflects that (1) Del Sol's parking lot is used by approximately 26,000 vehicles per day, (2) it has been in use as a shopping center for over twenty years, and (3) in that time period only three vehicles ever struck Del Sol's buildings and only one of those (Ms. Ruiz's pick-up truck) ever penetrated the building and caused more than minor damage to the premises. The sheer improbability and lack of inherent danger, as shown by those statistics, are commonly cited around the country as a basis to refuse to extend a specific duty of care to this category of accidents. *See, e.g.*, *Eckerd-Walton, Inc. v. Adams*, 190 S.E.2d 490, 492 (Ga. Ct. App. 1972) (holding that the alleged act of negligence—that "defendant should have [taken precautions in] anticipat[ion] that some negligent motorist would attempt to drive through his store"—was "so remote and improbable as not reasonably to be anticipated by a merchant in the exercise of ordinary care"); *Mack v. McGrath*, 150 N.W.2d 681, 686 (Minn. 1967) ("We agree that liability cannot be predicated on the fact that out of the many thousands of vehicles which use parking areas in a normal way, one or two may occasionally jump the curb and expose pedestrians as well as tenants to the remote possibility of injury.").

**{17}** Other than sharing an inherent vulnerability to intrusion by runaway vehicles with many like-situated shopping centers, we disagree that there was anything about Del Sol or its adjacent parking lot that justifies a broadened standard of care owed to visitors. Like other states, New Mexico's shopping centers run some minimal but known risk of vehicle-building collisions, as proximity to high-traffic roads and the attendant need for parking space are highly advantageous, if not necessary, components to the success of any business location.

**Public Policy**

**{18}** Last, we turn to public policy. In so doing, we apply that primary barometer of legal duty, identified by *Edward C.*, to ascertain the scope of ordinary care owed by Defendants to Plaintiffs. 2010-NMSC-043, ¶ 14. "The existence of a duty is a question of policy to be

determined with reference to legal precedent, statutes, and other principles comprising the law." *Calkins*, 110 N.M. at 62, 792 P.2d at 39. Because "it is the particular domain of the [L]egislature, as the voice of the people, to make public policy," we would normally begin our analysis by construing any applicable statutes and regulations that may apply to shopping center design and maintenance. *Torres*, 119 N.M. at 612, 894 P.2d at 389. Defendants contend and Plaintiffs do not refute, however, that "[i]n this instance, there are no laws, codes or ordinances promulgated by the legislature, nor any governing body, that mandate the placement of barriers sufficient to prevent vehicles that leave the designated roadway from crashing through businesses in a strip mall." Similarly, nothing in the record presented by any plaintiff indicates that Defendants' parking lot was not in full compliance with applicable state and local building codes. And finally, no party cites any passage of law indicating the Legislature's stance, if it exists, with respect to liability in this instance.

**{19}** To show Defendants failed to meet generally accepted norms of safety, Plaintiffs submitted an affidavit to both district courts prepared by Barrett Miller, whose asserted expertise included "identifying and controlling safety hazards involving errant vehicles, commercial parking lots, and building structures." Plaintiffs contend that Mr. Miller's assessment and recommendations, alongside referenced academic publications in the field of safety engineering, establish that Del Sol harbored several identifiable safety hazards. These were: (1) "[t]he long 600-foot straightaway and 'T-bone' configuration of the parking lot and shopping center"; (2) "[t]he 'absence' of any traffic control devices . . . at the end of the long straightaway"; (3) "[t]he absence of bollards to protect against errant vehicles"; (4) the history of traffic patterns, "including speeding vehicles, 'rolling' stops, collisions, and cars parked illegally"; (5) "[t]he washboard surface of the parking lot"; (6) the presence of a medical care clinic and bar, "which may attract impaired and/or careless drivers"; and (7) "[t]he high vehicle traffic numbers . . . per day." Among other exhibits in support of their opposition to motions for summary judgment, Plaintiffs presented several photographs of other local businesses that have installed bollards and pillars in front of their entrances and store-front glass walls.

**{20}** We disagree that the proffered evidence, considered collectively, legally establishes a norm of professional safety giving rise to an expanded duty to protect. Despite Mr. Miller's hindsight identification of the many *potential* manners of hazard prevention, only the placement of bollards or additional barriers at short intervals from one another could have definitively prevented a runaway vehicle from crashing through Del Sol's storefronts. Neither the layout of the parking lot, its history, surface, heavy use, signage, or the nature of its surrounding businesses could have prevented the injuries and loss of life that occurred within Concentra. Rather, the tragedy depended wholly upon the presence of a faulty vehicle at the hands of an inept driver. Accordingly, the essence of Plaintiffs' assertion is that Del Sol bore at all times a duty to protect its indoor patrons—by erecting some type of impenetrable barrier between the shopping center and its adjacent parking lot—to prevent vehicle-person collisions within Del Sol's buildings. That an expert has identified certain "safety hazards" and recommended placement of bollards and barriers does not indicate that Del Sol's election not to employ such safety devices falls beneath professional norms of

13

safety. Similarly, the fact that some nearby businesses have undertaken affirmative precautionary measures does not establish a newly applicable safety norm, a building code-derived regulation, or a public policy. *See Hartford Ins. Co. v. Cline*, 2006-NMSC-033, ¶ 8, 140 N.M. 16, 139 P.3d 176 ("The predominant voice behind the declaration of public policy of the state must come from the [L]egislature . . . .").

{21} More compellingly, based on the briefs and the record developed before the district courts, we can discern *no* policy articulated by the Legislature, or city and county government, addressing the specific requirements of shopping center parking lot construction, or endorsing the heightened standards of safety advanced by Plaintiffs. The parties similarly have not alerted us to any regulation, code, or statute that suggests Del Sol was in any way non-compliant with the commercial building code, the international building code adopted therein, or even accepted professional norms of safety. *See* 14.7.2.8(A) NMAC ("This rule adopts by reference the 2009 international building code, as amended by this rule."). But nonetheless, and with an eye toward determinations of policy, we compare instances where our courts *have* included within the duty of ordinary care a requirement to specifically protect visitors from third-party harm. *See Torres*, 119 N.M. at 612, 894 P.2d at 389 ("Courts should make policy . . . only when the body politic has not spoken and only with the understanding that any misperception of the public mind may be corrected shortly by the [L]egislature.").

**New Mexico Precedent**

{22} It is clear, as stated above, that an owner/occupier's duty is one of ordinary care. That standard can include the protection of visitors from the acts of third parties in certain circumstances:

> [T]he proprietor of a place of business . . . is subject to liability to guests who are upon the premises and who are injured by the harmful acts of third persons if, by the exercise of reasonable care, the proprietor could have discovered that such acts were being done or about to be done, and could have protected against the injury by controlling the conduct of the other patron.

*Coca v. Arceo*, 71 N.M. 186, 189, 376 P.2d 970, 973 (1962). We have, however, recognized such a "duty to protect" in *only* two contexts: (1) for bar owner/occupiers to their patrons who are injured by the intentional violent conduct of other patrons, *see id.*; *Reichert*, 117 N.M. at 626, 875 P.2d at 382; *Barth v. Coleman*, 118 N.M. 1, 878 P.2d 319 (1994), and (2) for private homeowners whose visitors are injured by the foreseeable criminal conduct of a third party, *Chavez v. Torres*, 1999-NMCA-133, 128 N.M. 171, 991 P.2d 1.

{23} In each of these cases, the specific circumstances of the given environment were sufficient to place the defendants on notice of the specific third-party actors and their propensity to act. For example, *Coca*, *Reichert*, and *Barth* recognized predictable dangers

14

when serving alcohol to patrons involved in known personal disputes. *See Coca*, 71 N.M. at 188, 376 P.2d at 972 (barroom attack with glass bottle by patron known to have insulted and argued with another patron earlier that evening); *Reichert*, 117 N.M. at 624, 875 P.2d at 380 (barroom shooting by patron known to be violent, armed, and arguing with another patron); *Barth*, 118 N.M. at 2, 878 P.2d at 320 (barroom attack following previous altercation and manager's assurance to the victim that he "would monitor the situation"). Similarly, in *Chavez* this Court recognized a "duty to protect" owed by residential homeowners who were present and "knew or should have known of the ability to control persons causing injury to a visitor and the necessity and opportunity to exercise such control." 1999-NMCA-133, ¶ 20.

**{24}** We conclude that the case at bar is distinguishable from both circumstances where our jurisprudence has recognized a duty to protect. Here, Del Sol could not have anticipated, prevented, or even reacted to Ms. Ruiz and her runaway truck, unlike a bar owner/occupier's ability to anticipate barroom violence by observing patrons over time, or a homeowner's ability to exclude guests known to be dangerous. And although Plaintiffs sought to impute knowledge of risk by presenting evidence of two previous vehicle-building collisions that occurred during the twenty years Del Sol existed, neither involved the penetration of the building's front, or more notably, resulted in injury to patrons inside. Moreover, neither incident involved the parking lot's long straightaway or directly related to Del Sol's parking lot configuration. *See Cromer v. Hutto*, 280 S.E.2d 202, 203 (S.C. 1981) ("[N]o liability results from lack of a safety barrier unless that condition contributed to the loss of control."). Rather, the prior incidents at Del Sol were minor mishaps caused by common driver error. Thus, we can discern no basis on the facts of these cases to legally extend a "duty to protect" visitors from runaway vehicles into the responsiblility of ordinary care applicable to Defendants.

**{25}** Furthermore, as the district courts recognized, we have refused to apply the same "duty to protect" in a third context—to convenience store owners whose patrons are the targets of an intentional homicidal attack. In *Romero*, this Court imported reasoning from a California case:

> It was an act of terrorism that could have occurred anywhere that the intended victim happened to be. [The defendant] had no basis to foresee such event, and there was no effective action which it could reasonably have taken to prevent said act under the circumstances. . . . The shooting was a transitory act that could have been carried out at any time and place that the intended victim happened to be.

2009-NMCA-059, ¶ 14 (alteration in original) (citation omitted). Although *Romero* excluded from the construct of ordinary care an obligation to protect from *intentional* criminal acts, its reasoning is analogous. Ms. Ruiz's truck could have collided with an object or a person anywhere she chose to drive that day; the actual location and the persons struck were products of happenstance. And short of erecting a substantial barrier in front of

all its business-front windows, there was no definitively prophylactic action Del Sol could have undertaken to ensure it was not the location at which tragedy struck. All cars cannot point away from a given inhabited building at all times, and all storefronts with roadway access cannot be expected to erect concrete barriers to guarantee the prevention of such lightning strikes of misfortune. We perceive no basis within our caselaw on which to expand liability to this category of accidents as a matter of policy, absent some guidance or directive from our Legislature.

**{26}** Finally, we note the existence of two additional principles of law in our appellate jurisprudence that supplementally support our determination of policy. The first proposition—that "a proprietor or store owner is not an insurer or guarantor of the safety of his [or her] business invitees"—was included within a former version of our uniform jury instruction given in "slip and fall" cases. *Hallett v. Furr's, Inc.*, 71 N.M. 377, 382, 378 P.2d 613, 617 (1963), *overruled in part on other grounds by Proctor v. Waxler*, 84 N.M. 361, 503 P.2d 644 (1972); UJI 13-1318 NMRA (prior to 1996 amendment). And while we have since deleted that language from the UJI itself, the principle remains intact within New Mexico law. *Brooks v. K-Mart Corp.*, 1998-NMSC-028, ¶ 10, 125 N.M. 537, 964 P.2d 98. The second principle that provides guidance is our recognition that "New Mexico has already determined where much of the burden of tort liability should lie when a motor vehicle is involved in an accident" by mandating "that all residents who own and operate motor vehicles be financially responsible for damages as a result of motor vehicle accidents." *Blake*, 2004-NMCA-002, ¶ 23; *cf. Ziemba v. Mierzwa*, 566 N.E.2d 1365, 1369 (Ill. 1991) ("The underlying rationale for holding a landowner liable for injuries occurring as a result of conditions on his land is that the landowner is in the best position to prevent the injury. However, in this case, we find that the truck driver was in the best position to prevent the injury. Thus the usual justification for imposing landowner liability is not present . . . .").

**{27}** We conclude that these principles within our precedent additionally support our decision to circumscribe the owner/occupant's "duty to protect" short of vehicle-building collisions. We cannot require premises owner/occupants to anticipate, implement ways to thwart, or to otherwise shoulder the burden of financial liability for the disastrous consequences of remote mechanical and human fallibility. To do so would, in essence, require premises owners to become absolute insurers of patron safety, forcing businesses into one of three undesirable alternatives: (1) significantly revise the physical and aesthetic layout of buildings and parking lots at substantial expense, (2) retain the status quo and risk the enormous cost of catastrophic liability, or (3) close down the business premises entirely. Moreover, "[t]o erect an impregnable barrier around all of the buildings would both obstruct normal pedestrian traffic and impose on the owners a burden completely out of proportion to the anticipated risk." *Mack*, 150 N.W.2d at 686. We believe it particularly unwise to impose such a wide reaching duty in the absence of clear guidance from our Legislature or our precedent. *See Ciup v. Chevron U.S.A., Inc.*, 1996-NMSC-062, ¶ 19, 122 N.M. 537, 928 P.2d 263 (noting that "[u]nder these circumstances, we have no basis for expanding liability by recognizing a duty other than that arising under existing case law"). It is not the business of the judiciary to so burden facilities across the state with accountability for conduct they

16

cannot reasonably regulate.

## Out of State Precedent

{28}    We note that the great weight of authority from around the country has similarly refused to recognize a duty of business owners to protect their indoor patrons from vehicle collisions. *See, e.g.*, *Fawley v. Martin's Supermarkets, Inc.*, 618 N.E.2d 10, 13 (Ind. Ct. App. 1993) ("The majority of cases from other jurisdictions have likewise concluded that a store owner owes no duty to invitees to protect them from runaway vehicles in parking lots, since this kind of occurrence is not sufficiently foreseeable for a store owner to be required to protect against it."). Most have done so based on a foreseeability-driven duty analysis. *Albert v. Hsu*, 602 So.2d 895, 896 (Ala. 1992) (no duty to protect 10-year-old decedent from car that backed through restaurant from adjacent parking lot because "harm was not reasonably foreseeable"); *Howe v. Stubbs*, 570 A.2d 1203, 1203 (Me. 1990) (no duty to protect patron standing inside store from vehicles, despite store's location at base of hill and three previous similar accidents); *Glick v. Prince Italian Foods of Saugus, Inc.*, 514 N.E.2d 100, 101 (Mass. App. Ct. 1987) (no duty to protect from out-of-control automobile that crashed into restaurant from adjacent road "because the harm was not reasonably foreseeable"); (*Carpenter v. Stop-N-Go Markets of Georgia, Inc.*, 512 So.2d 708, 709 (Miss. 1987) ("no duty owed by a convenience store owner, to persons inside the store, to erect barriers in order to prevent vehicles from driving through the store's plate glass window"); *Carter v. Gambulous*, 748 P.2d 1008, 1009 (Okla. Civ. App. 1987) ("While [the a]ppellee is indeed under a duty to use reasonable care with respect to his customers, the accident herein was not foreseeable, and [the a]ppellee is not an absolute insurer of his customers' safety."); *Watkins v. Davis*, 308 S.W.2d 906, 909 (Tex. App. 1957) ("doctrine of unforeseeable consequences is likewise deemed applicable here"); *but see, e.g.*, *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1059-60 (Ill. 2006) (duty of ordinary care includes the duty to protect patrons inside buildings from runaway vehicles).

One of the seminal cases on this issue is often quoted as stating:

[I]t cannot be contended with any degree of reason or logic that the owner of a store, by permitting automobiles to park perpendicularly to the curb in front of his entrance, or by failing to erect an impregnable barrier between the entrance of his store and an adjacent area where motor vehicles are driven and parked, should have anticipated that automobiles will be negligently propelled over the curb and across the sidewalk into the entrance of his store. We are not unmindful of the obvious fact that at times operators lose control over the forward progress and direction of their vehicles either through negligence or as a result of defective mechanisms, which sometimes results in damage or injury to others. In a sense all such occurrences are foreseeable. They are not, however, incidents to ordinary operation of vehicles, and do not happen in the ordinary and normal course of events. When they happen, the consequences resulting therefrom are matters of

17

chance and speculation. If as a matter of law such occurrences are held to be foreseeable and therefore to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter. Such occurrences fall within the category of the unusual or extraordinary, and are therefore unforeseeable in contemplation of the law.

*Schatz v. 7-Eleven, Inc.*, 128 So.2d 901, 904 (Fla. Dist. Ct. App. 1961). No matter the methodology employed, the result reached by the majority of courts addressing this issue is consistent, if not expressly referenced therein, with the sound determination of policy.

## III.    CONCLUSION

**{29}**    No one can deny the inexorable finality of what occurred at the Del Sol Shopping Center on March 17, 2006. That the most fundamental characteristic of time is its unidirectional progression is never more apparent than when our collective humanity desires something heartbreaking to be reversed. But sometimes in law, no matter how unfair the misfortune perpetrated upon innocents, or how universally just may be the corresponding calls for retribution, no legal remedy can stand against those whose only role is to own, develop, or occupy a physical space as situationally vulnerable to calamity as any other. "There are, moreover, innumerable, tremendous risks inherent in our modern-day, complex society." *Madrid v. Lincoln Cnty. Med. Ctr.*, 121 N.M. 133, 139, 909 P.2d 14, 20 (Ct. App. 1995). Today, we hold as a matter of policy that the owners and operators of Del Sol were not assigned the duty to prevent the tragedy that occurred on its premises, or to protect its patrons from the extraordinary events arising from pervasive modern-day risks. Accordingly, we affirm the ruling of the district courts that dismissed Plaintiffs' claims against Defendants as a matter of law.

**{30}    IT IS SO ORDERED.**

 

 

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

 

_____

**JAMES J. WECHSLER, Judge**

 

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for *Rodriguez v. Del Sol Shopping Ctr. Assoc., LP*, Nos. 30,421/30,578**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Expert Witnesses
Summary Judgment

**NEGLIGENCE**
Duty
Foreseeability
Wrongful Death

**TORTS**
Foreseeability
Invitees
Negligence
Premises Liability
Wrongful Death